Good morning, Your Honors. Ron Shea, representing Plaintiff and Appellants, Nylonda Sharnese et al. As I looked at the briefs which I've submitted, I think there was one deficiency of like 60 seconds, perhaps, to rehabilitate that. Respecting the question of the sovereign immunity of the state, I think the real question goes to when our nation was formed, we laid our foundations on certain principles that should seem to us most likely to secure our safety and happiness. Those were two principles, one that all men were created equal, and second that they were endowed by their creator with certain unalienable rights. Of the first principle, it was never decided in the court, it was decided on a great battlefield. Therefore, the only question of those two which would ever be decided in court is the second, and it never has been, and by some strange confluence of circumstance, that really becomes the question which is laying at the foot of this court today, which I feel becomes the most important question ever placed to the feet of the court. Patrick Kennedy shared these sympathies on June 6, 1788, before the Virginia Ratifying Convention. He said, the fate of this question and of America may turn on this question, sir, for did they say, we the states, or we the people? The question, sir, turns on that poor little thing, the expression, we the people, rather than we the states. Now, concerning the 11th Amendment, or sovereign immunity of the states, there are three kinds of rights which we the people have, and unless these are distinguished carefully, we can't discuss the question of sovereign immunity. First, there are rights which we the people granted general police powers to the states, and they confer certain rights back on us. Of those, the state unquestionably is the sovereign, and therefore may claim sovereign immunity. Second, the state granted limited powers to the federal government, and the federal government conferred some of those back to we the people. Of those, the federal government is unquestionably sovereign, and therefore may claim sovereign immunity. However, there is a third class of rights, and those are retained by we the people. Congress unanimously declared that these were given on grant by our Creator, and Congress again repeated in the 9th Amendment that these were retained by we the people, not given by the government. So the question really becomes today, how is it that California can stand with impertinence before the bar of this court today, and claim sovereign immunity over the tiny enclave of rights where we the people have retained prerogatives and attributes of sovereignty? That, I feel, is the real issue before this court today, Your Honors. Thank you, Jeff. Do you wish to add anything? I thought I was going to be peppered with questions. I had a ten-minute spiel and cut it down after I sat in and watched how little people got to say. I think this is universally recognized. For example, in December of 1804, Ferdinand Ries told his mentor, Ludwig van Napoleon, had taken the crown from the hand of Pope Pius VII and crowned himself. And this wasn't lost to any educated person, that attributes and prerogatives of sovereignty are conferred from a grantor to a grantee. And by taking the crown from the hands of Pope Pius VII, Napoleon was simply saying, you're not going to confer anything on me. I'm going to take all rights and prerogatives which I so choose. Beethoven, when he learned this, broke into a rage and said, now he, too, will tread underfoot all the rights of man and become a tyrant, at which time he tore the cover page of the Bonaparte Symphony, and it's now entitled the Eroica Symphony. I think that it's simply common sense that you can't give what you don't have. The state government does not have any claim of the and affirmed in the Bill of Rights and in the Ninth Amendment as, quote, others retained by the people. Of these rights for it to attempt to lay claim is simply an act of tyranny and it's Bonapartism redivivus. I would ask the state two questions. Number one, since governments are instituted among men deriving their just powers from the consent of the governed, and enjoyed by any states in this union, I would like for California to explain where it derives the sovereignty to claim sovereign immunity over rights which were conferred by the Creator on we the people and which Congress unanimously declared we retained in the Ninth Amendment. And my second question is simply this. Can the state show me one case, one case dealing with the Bill of Rights where the state has been granted sovereign immunity over we the people? I know of only one such case that was Monroe v. Pape, a search and seizure case, and that was overturned by Monell v. Department of Social Services. There are no other cases and the Supreme Court was wrong and fortunately overturned that one. There is no sovereign immunity for the state in these matters. Concerning the fact that Nalanda Sharnese was denied access to the court, I believe that the right of the people to petition the government for a redress of grievances is a fundamental right in the Bill of Rights. When Judge Lattin used his influence as the presiding judge of the Van Nuys Courthouse to cause other judges to dismiss her case with prejudice without a single hearing on the merit, she was denied her right to petition the government for a redress of grievances. This is a fundamental right of which she retained sovereignty. When Judge Lattin constructively denied her the right of counsel, constructively denied her the right to present evidence, these were also deprivations of fundamental rights. When Judge Lattin searched the courthouse records and revoked the fee waivers of the other homeless and indigent clients represented by Ms. Sharnese's counsel, well, he had a right, a liberty and property interest, to practice his profession which was, which he was deprived of by Judge Lattin. This is once again a deprivation of a fundamental right. All of these deprivations go to the Bill of Rights, the fundamental rights of we the people. There is no case law on point where the state may claim sovereign immunity over this tiny enclave where we the people have retained sovereignty. And with that, if there are no immediate questions, I defer and save any time I have for rebuttal. Thank you, Kevin. Thank you. Good morning. May it please the Court, Kevin McCormick for Defendants and Appellees, the Superior Court of California, County of Los Angeles. The Honorable Michael A. Lattin, Judge of the Superior Court and Trial Court Employee, Patty Sundstrom. Counsel, I have a question about judicial immunity. Yes, Your Honor. There is an allegation in this complaint that we have to take as true for purposes of this argument today regarding a judge acting in a capacity that would be quite exceptional. And, of course, judicial immunity is very, very broad. But the allegation here is that this judge actually modified a transcript so that it would, I think if you look at the complaint generously, so it would actually misrepresent or omit something that happened in the trial court. What's your position on that? Your Honor, my understanding of judicial immunity in the case law cited is that would be covered. And my understanding of the transcripts modification was to omit certain words such as stupid appearing four times instead of two times. Well, do you think that matters, whether or not the degree of the modification of the transcript? Is that what you're suggesting? I do not. Okay. So is it your position, then, that a judge acting in that capacity of perhaps modifying a transcript would be acting within the scope of his judicial function? It happened during the court proceedings that were properly in front of him. So the answer to the question is yes? Yes. When you said it happened during the proceedings, the allegation, of course, is that it happened afterwards, but... It arises from the proceeding itself. All right. So that's your position? Yes. Thank you. And what about the argument on self-immunity, where your opposing counsel says there's no case that involves a fundamental right that's reserved by the people? Your Honor, my understanding, again, looking at the report and recommendation, a number of cases were cited, both in the motion to dismiss itself and the report. Excuse me. That affirm the presence of the 11th Amendment and sovereign immunity for the State of California. Well, your opponent says that this case involves a different type of right that's reserved to the people instead of the State. I wasn't quite sure what he meant by that, and my understanding is the 11th Amendment applies in this case, and the 11th Amendment has not been abrogated. His initial position in the trial court in this court was that, I believe, Alden abrogated the 11th Amendment, which is not the case. The 11th Amendment applies. Thank you. Anything further you wish to say? Nothing, your Honor. Thank you. All right. We'll give you a minute or two for a brief. Thank you, your Honor. Concerning the deficiencies of my original briefs, and I concede there were many, these currents and eddies of federal jurisdiction which an august tribunal such as this finds such plain sailing are rather daunting to landlubbers such as myself, and it took me a great while to think through the real issues of federal jurisdiction here. And I apologize, I didn't mean to sandbag opposing counsel or anyone on that. It just took a while to formulate the arguments. Concerning the question of a non-judicial function, there's no question that criminally altering the transcripts was a non-judicial function. Number one, I would point out that Richard Milhous Nixon, and there is no greater immunity accorded anyone in our government than the head of state because by the nature of the office there's national secrets, and yet Richard Milhous Nixon was not accorded any immunity as the head of state for tampering with evidence and destroying it. Well, I don't think he was ever subjected to a trial, so the issue never came up. I would concede it became moot. That popular opinion does not make law, I would concede that, Your Honor. The other argument I'd point out is to stand here and say, well, that was part of a judicial function. Well, in Antwon v. Byer, a court reporter lost some transcripts, and there was not even any hint that there was malevolence or any purpose or even recklessness. It was mere negligence, and yet the court said that no immunity applied to the court reporter because court reporting is supposed to be a verbatim. There is no discretionary function involved. Imagine the prescience of a Supreme Court to use that as an example, and here we have a judge who took it upon himself to act as a court reporter and alter the transcript. I would submit that for the same reasons as clarified in Antwon v. Byer, there is no judicial immunity which can be accorded to former Judge Michael Lattin for participating in this act. And the extent of the overhaul is really not before this court because we don't have the ticker tape yet. We will get that. Can I ask you one question? Yes, sir. You were sanctioned in both the state court and the federal court? No, just state court. It was on the second of the first trial, the first hearing to bifurcate the Demurra hearing had been consolidated by opposing counsels without notifying me, and so I filed a motion to bifurcate them, and the first one was sort of a rather embarrassing situation in court, so I filed a motion for reconsideration, even though under the 14th Amendment there hadn't been a hearing, but nominally I called it a motion for reconsideration, and it was sent back up, and it was at the second one that Judge Lattin continued saying it was the stupidest motion he'd ever heard, and he actually began speaking about a motion that I didn't file, which kind of demonstrated he hadn't even read my motion, and that's when he announced that he was going to sanction me up to something like $10,000, which would have been about half a year of Social Security disability benefits, and I had never been given the right to say a word or represent my client, and bifurcation is a standard option on page 3 of form CMC-100. Well, let me try to find out. It's only the state court sanctions that you are appealing here? Yes. Well, there was a volley of motions for sanctions between opposing counsel and myself, and I guess they're before the court, but frankly I couldn't care less about them. I think the most important issue is a question of the rights of we the people, and that's... I understand, but I just want to see what the issue is. The state court sanctions for Judge Lattin. Yes. Were they appealed through the state court? Oh, yes, they're not on appeal here, and I did agree with when opposing counsel pointed out that that came under Rooker-Feldman. I agreed 100% and tried to strike it in my amended complaint, which was not received, but, yeah, I'm not appealing those at this court. Thank you. They're not amended. Thank you, Your Honor. The case just heard will be submitted.
judges: Sedwick, Reinhardt, Christen